## Case No. 11,086.

### PHILADELPHIA & R. R. CO. v. BARNARD et al.

[3 Ben. 39.] [1]

District Court, E. D. New York. Nov., 1868.

FREIGHT—BILL OF LADING—ASSIGNEE.

1. Where a cargo of coal, before its delivery from the vessel, had been sold by the shippers to one Merritt, who sold it to one Blanchard, and he sold it to one Bass, who received part of it, and paid to the owners of the vessel freight on what he received, and refused to receive any more, and Blanchard then sold the rest to the respondents, who received no bill of lading, but received the coal from the vessel, and gave a receipt for it upon the captain's bill of lading, and gave Blanchard two notes, one for the price for the coal, and one for the freight, which Blanchard agreed to see paid, but which he failed to pay, and died insolvent, held, that the respondents were liable to the owners of the vessel for the freight on the coal which they received.

[Cited in North-German Lloyd v. Heule, 44 Fed. 101.]

2. Whoever receives cargo from a vessel under a bill of lading, in the absence of circumstances showing a different understanding, is liable for the freight.

3. It is not necessary that a bill of lading should be actually indorsed, or even delivered, to a buyer, to make him an assignee of it.

This was an action brought [by the Philadelphia and Reading Railroad Company against John T. Barnard and Sons] to recover $287.92 freight on a portion of a cargo of coal transported and delivered by the libellants under the following circumstances: L. T. Conner & Co., at Philadelphia, shipped 214 tons of coal on board the boat of the libellants, for which the ordinary bill of lading was issued, according to which the coal was to be transported to New York, and there delivered to the shippers or their assigns, he or they paying freight for the same at the rate mentioned therein. The margin of the bill of lading contained a memorandum that the freight was to be paid to D. E. Moore, the agent of the libellants, at Trinity Buildings, New York. Under this contract, the coal was safely transported to New York, and delivered as follows: Twenty-one tons to one Bass, who paid to the libellants freight on what he received, but declined to receive any more on account of an objection to the qual-

ity, whereupon the balance, 179 tons, was delivered from the vessel's side to the defendants in this action, who thereupon gave a receipt upon the back of the captain's copy of the bill of lading, acknowledging the receipt from the libellants of the 189 tons. It appeared that the coal, before delivery, had been sold by the shippers to one Merritt, by him sold to one C. A. L. Blanchard, by him sold to Bass; and when Bass threw up the purchase after receiving the twenty-one tons, Blanchard sold the rest to the defendants. The defendants objected at first to buying the coal, because coal was dull of sale, and they would be obliged to pay the freight at once; whereupon Blanchard agreed to see that the freight was paid, if the defendants would give him their note for the amount of it. This was done, and the defendants, after the receipt of the coal from the vessel, gave Blanchard their two notes, one for the price of the coal, the other for the amount of the freight, with the interest added, both of which notes were duly paid. No copy of the bill of lading was indorsed or delivered to the defendants, nor any other evidence of the purchase made.

Benedict & Benedict, for libellants.
Geo. W. Wingate, for respondents.

BENEDICT, District Judge. Upon the facts in this case which are not disputed, there can be no doubt of the libellants' right to recover their freight of the defendants. It is clear law that whoever receives cargo from a ship under a bill of lading, in the absence of circumstances showing a different understanding, is liable to the ship for the freight. It is not absolutely necessary that a bill of lading should be actually indorsed, or even delivered to the buyer, to make him the assignee thereof. Other circumstances may be shown equally sufficient to show the real relationship of a party to the cargo. Here the defendants received the coal themselves from the vessel's side; they gave no notice to the master or any one that they did not receive it under the bill of lading. After its delivery, they gave to the master, upon the back of his copy of the bill of lading, a receipt stating that they had received the coal from the libellants. Under such circumstances, they cannot be permitted to say that they dealt only with Blanchard, and are strangers to the contract for the freight. As between them and the vessel, they became, under the circumstances, the assignees of the bill of lading. They dealt with the ship in that capacity and no other, and the receipt of the coal made them liable, as such, for the freight. Besides it is clear that the defendants understood themselves to be liable to the ship for the freight, for one of them testifies that he at first declined to buy the coal of Blanchard because coal was dull, and he knew he would have to pay the freight, which objection Blanchard obviated by agreeing to take their note for the freight, and seeing they were

not compelled to pay it. This was accepted, and after the coal was delivered and their liability for the freight fixed, they gave to Blanchard their note for the amount of the freight, with interest added, of all which the libellants knew nothing. This indicates clearly that the defendants understood their liability to the ship and relied upon Blanchard to save them from it. Their misfortune is to have relied upon a man whose death and insolvency made it impossible for him to protect them. There must be a decree in favor of the libellants for $287.92 with interest and costs.